**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| DWAYNE WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CASE NO. 07 C 1815 |
| v. | ) | |
| | ) | |
| ANDY OTT, Warden | ) | |
| Graham Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Dwayne Williams ("Williams"), an Illinois state prisoner, seeks a writ of habeas corpus [1] pursuant to 28 U.S.C. § 2254, claiming that he is being held in custody in violation of the Constitution of the United States. Williams' petition has been fully briefed. For the following reasons, Williams' petition for writ of habeas corpus [1] is denied.

**I.      Background**

Petitioner does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's decision on direct appeal, and thus the Court presumes those fact are correct for purposes of its habeas review. See *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Therefore, the Court adopts the following accounts from the Illinois Appellate Court's Rule 23 Order in *People v. Williams*, Nos. 2-02-1375 & 2-02-1227 (Ill. App. 2d Dist. June 22, 2004). Ex. D[1] (Rule 23 Order).

---

[1] The Court will refer to the state court materials that accompanied Respondent's Answer (as required by Rule 5(d) Governing Section 2254 Habeas Cases) by their exhibit designation.

**A.     Factual Background**

Following a 2002 jury trial, Dwayne Williams was convicted of home invasion and attempted criminal sexual assault. Ex. D at 1. The trial court sentenced him to imprisonment for twenty years for home invasion and seven years for attempted criminal sexual assault, to be served concurrently. *Id*. Williams' convictions stem from events that took place on the evening of July 13, 2002. *Id*. at 2. Deana Forrester testified at trial that on that evening she was repairing her car in the parking lot of her Waukegon apartment complex when Williams approached her. *Id*. He introduced himself and offered to help Forrester fix her car. *Id*. Forrester declined, and after approximately fifteen minutes of conversation, Williams left and entered the apartment building next to hers. As Williams left, he placed his business card on the walkway for Forrester. *Id*. Forrester continued working on her car. *Id*. Williams approached her again approximately fifteen minutes later and attempted to start a conversation. *Id*. This exchange lasted less than five minutes, after which Williams left and re-entered the apartment building next to the building in which Forrester lived. *Id*.

As Forrester continued working on her car, she noticed someone watching her from a balcony of the building that Williams had entered. *Id*. Forrester testified that although she was too far away to make a positive identification, the person watching her was a black male with little hair. *Id*.

Forrester finished repairing her car and took it for a test drive for approximately fifteen minutes. *Id*. When she returned, Forrester parked in the same place and entered her building by using her key on the locked outer door. *Id*. As Forrester entered the building she saw a black hand grab the door. *Id*. Forrester then proceeded to the second floor, and when she opened the non-secure door, she saw that it was Williams who had followed her in. *Id*.

Forrester continued to her apartment and entered it.  *Id*.  When Forrester didn't hear her heavy front door slam shut she turned around and saw Williams standing in the doorway.  *Id*.  He entered her apartment.  *Id*.  Forrester told him to leave.  *Id*.  Instead, Williams removed his shoes and sat down on her couch.  *Id*.  Forrester again told him to leave, and again he did not.  *Id*. at 3.  Instead, Williams rose up, grabbed Forrester, and shoved her onto the couch. Williams lifted up her shirt and tried to rub her back.  *Id*.  While restraining her hands, Williams straddled her hips and tried to kiss her.  *Id*.  Forrester continued to resist and again told him to leave.  *Id*.  Pinning her hands under his knees, Williams then lowered his jeans and took his penis out from his boxer shorts and directed Forrester to put her hands and mouth on it, but she refused.  *Id*. Williams grabbed Forrester's breasts through her clothing and attempted to pull down her shorts.  *Id*.

Forrester then told Williams that she had her period and a disease that could be transmitted through bodily fluids.  *Id*.  Williams apologized and got up.  *Id*.  Forrester again told him to leave.  *Id*.  On his way out, Williams tore the business card he had given Forrester in half and wrote a number on it, which he said was his cell phone number.  *Id*.  Williams then left her apartment.  *Id*.  Forrester testified that Williams had been in her apartment between fifteen and twenty-five minutes, during which time she had noted his blue contact lenses.  *Id*.

Forrester testified that she attempted to call her mother in California, whose phone was disconnected.  *Id*.  Forrester next called her sister, who told her to call the police.  *Id*.  Forrester called the police that night at approximately 11:30 p.m.  *Id*.

Three days later, Forrester's mother, who had come from California, saw a man walking near the apartment complex and asked Forrester if he was the man who had attempted to assault her, and Forrester said that he was.  *Id*.  Forrester called the police, went to the police station, and gave a written statement.  Forrester then identified Williams in a photo line-up.  *Id*.

**B.      Procedural Background**

Following his conviction by a jury trial for home invasion and attempted criminal sexual assault in the Circuit Court of Lake County, Williams filed a timely appeal claiming: (1) the prosecution failed to prove Williams' guilt beyond a reasonable doubt; (2) the trial court denied him due process by failing to appoint "conflict counsel" to represent him when his defense attorney claimed Williams had threatened him; (3) the trial court denied him due process by requiring him to wear leg shackles and stationing two "jail officers" "right behind him" (4) the trial court denied him due process when it improperly relied on Williams' request for different counsel in an unrelated case in 1998 to deny his request for new counsel in this case. Ex. A (Dir. App. Br.) at 12-26. The Illinois Appellate Court affirmed the judgment of the trial court on June 22, 2004. Ex. D.

Thereafter, Williams filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, raising the same issues. Ex. E (PLA). The Illinois Supreme Court denied the PLA on October 6, 2004. Ex. F (*People v. Williams*, No. 98-841).

On April 14, 2005, Williams filed a *pro se* petition for post-conviction relief in the Circuit Court of Lake County. Ex. G (Post-Conviction Pet.). On June 27, 2005 the Circuit Court of Lake County summarily dismissed the post-conviction petition as frivolous and patently without merit. *Id.* at 3. Williams appealed the dismissal, arguing that his post-conviction petition stated "the gist" of a meritorious claim, namely that his constitutional right to the effective assistance of counsel was violated when his appellate counsel failed to challenge his twenty-year sentence on direct appeal. *Id.* at 4. The Illinois Appellate Court confirmed the dismissal of his post-conviction petition on October 24, 2006. Ex. I (Rule 23 Order). Williams raised the same ineffective assistance claim in his PLA to the Illinois Supreme Court on

November 22, 2006.  Ex. J (PLA).  The Supreme Court denied Williams' PLA on January 24, 2007.  Ex. K.

On April 2, 2007, Williams filed his petition for writ of habeas corpus in this Court. Construing Williams' *pro se* petition liberally, he raises the following constitutional claims: (1) the trial court denied Williams' right to due process when it failed to appoint "conflict counsel"; (2) the trial court denied Williams' right to due process when it ordered him to wear shackles and stationed two "jail officers" behind him at trial; (3) the trial court erred in allowing an amendment to the indictment; (4) trial counsel was ineffective because he failed to challenge the racial composition of the jury and failed to effectively cross-examine the State's witnesses at trial; and (5) the trial court failed to conduct an "adequate hearing" regarding Williams' claim of ineffective assistance of trial and failed to address defense counsel's safety concerns.

## II.    Standard of Review

### A.    Federal Habeas Relief for State Prisoners

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petition cannot be granted unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts."  28 U.S.C. §2254(d)(1-2) (2000).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision constitutes an "unreasonable application" of clearly established federal law if the state court identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *Williams*, 529 U.S. at 407. It should be noted that "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Rather, "unreasonable" means that a state court's decision lies "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

**B.      The Exhaustion Doctrine**

Before filing a habeas petition in federal court, a petitioner must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before proceeding to federal court. See *O'Sullivan,* 526 U.S. at 845 (concluding state prisoners must give the state court a full and fair opportunity to resolve federal constitutional claims by invoking those claims in "one complete round of the State's established appellate review process"); see also *Lewis v. Sternes*, 390 F.3d

1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary and that review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (holding that the petitioner in question was required to fully and fairly present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that court's review both of direct appeals and post-conviction petitions is discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court," the Court cannot reach the merits. *Chambers*, 264 F.3d at 737-38; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner already has pursued state court remedies and there is no

longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

However, if an opportunity still exists for the petitioner to return to state court to exhaust his or her unexhausted claims, the petitioner has not yet procedurally defaulted those claims and the Court must consider whether to dismiss the petition without prejudice or, if appropriate, stay the case. See *Rose v. Lundy*, 455 U.S. 509 (1982); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). Generally a federal district court may not adjudicate a mixed habeas petition. See U.S.C. § 2254(b)(1)(A); *Rose,* 455 U.S. at 518-19. Under the total exhaustion requirement, federal district courts are required to dismiss a mixed petition without prejudice to allow petitioners to pursue exhaustion of their claims. *Lundy*, 455 U.S. at 522. The petitioner then has the option of returning to state court to exhaust his or her claims or to resubmit his or her habeas petition presenting only the exhausted claims. *Id.* at 510. Although dismissal without prejudice is the typical response to a mixed petition filed prior to exhausting the available state remedies, the Court may, in the interest of comity or judicial economy, deny a habeas petition on the merits. See 28 U.S.C. § 2254(b)(2); see also *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987).

In limited circumstances, a court may "stay" a habeas petition to avoid limitations period problems. The enactment of the AEDPA altered the landscape of federal habeas law by imposing a one-year statute of limitations on the filing of federal petitions while preserving the total exhaustion requirement. See 28 U.S.C. § 2244(d). Under the AEDPA, the filing of a habeas petition in federal court does not toll the statute of limitations. See *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). As a result, habeas petitioners who file mixed petitions in federal courts run the risk of losing their opportunity for any review of their unexhausted claims. *Rhines*

*v. Weber*, 544 U.S. 269, 277 (2005).  In an attempt to solve this problem, some district courts have adopted a stay and abeyance procedure.  *Id.* at 275.  The stay and abeyance procedure should be used in "appropriate but limited circumstances."  *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006).  The Seventh Circuit has cautioned that a federal district court may only stay a mixed petition "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentional dilatory litigation tactics."  *Id.* at 278.

### C.     Procedural Default

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred.  *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n. 9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004).  Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review" – and the opportunity to raise that claim in state court has passed – the petitioner has procedurally defaulted that claim.  *Lewis*, 390 F.3d at 1026. Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding.  See *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005 ("When the last state court to issue an

opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed.").

Once a court has determined that a petitioner has procedurally defaulted one or more habeas claims, the default can be overcome only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or, alternatively, show that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Under the cause and prejudice test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F. 2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is established by showing that the violation of the petitioner's federal rights created "not merely * * * a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); see also *Lemons v. O'Sullivan*, 54 F. 3d 357, 362 (7th Cir. 1995). A federal court may grant a procedurally defaulted habeas petition even in absence of cause in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 466 U.S. at 496. In order to establish that a fundamental miscarriage of justice would result if habeas relief is denied, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

## III. Analysis

### A. Petitioner Procedurally Defaulted Claims

As a threshold matter, the Court considers whether Williams procedurally defaulted any of the five claims raised in his habeas petition. Respondent argues that Williams has procedurally defaulted three of the five claims and one factual allegation raised in his habeas petition based upon a failure to exhaust those claims during his Illinois state court proceedings. Ans. at 11. Specifically, Respondent argues that two of Petitioner's claims and an additional factual allegation were "never even hinted at in the briefs petitioner filed in the Illinois Appellate Court and Supreme Court." *Id.* In addition, Respondent contends that Williams' first claim that the trial court failed to appoint "conflict counsel" was not fairly presented to the state courts on direct appeal or in his post-conviction proceedings. The Court agrees, in part.

The Court first addresses Respondent's argument that Petitioner failed to fairly present his first habeas claim that the trial court failed to appoint "conflict counsel" after his trial counsel claimed Petitioner had threatened him. Specifically, Respondent contends that although Petitioner's briefs in his appeal and post-conviction petition mentioned the trial court's failure to appoint "conflict counsel," the term "conflict counsel" seemingly refers to an attorney who replaces the originally appointed counsel for "*any* reason." Ans. at 11-12. Thus, Respondent contends that the state courts would not necessarily have been alerted that Petitioner was in fact raising a conflict-of-interest claim, particularly given that he failed to cite to any authority. *Id.* at 12. This Court respectfully disagrees. On direct appeal, the Illinois Appellate Court clearly recognized that Petitioner raised a conflict-of-interest claim with the trial court based upon the dispute that arose between Petitioner and his defense counsel, noting that Petitioner had requested appointment of substitute counsel but that the trial court had resolved the issue by

ordering Petitioner to be shackled instead of appointing substitute counsel. Ex. D at 8. Petitioner, through appointed counsel, raised this claim in his PLA on direct appeal as well. Ex. E at 20. Therefore, Petitioner properly exhausted this claim through one full round of review in the Illinois courts.

In his third habeas claim, Petitioner alleges that his due process rights were violated when the trial court allowed amendments to the grand jury indictment over objections by his trial counsel. In the first of two parts of his fourth habeas claim, Petitioner alleges that he received ineffective assistance of trial counsel based upon counsel's failure to object to the racial composition of the jury – the new underlying factual allegation to which Respondent objects here. And finally, in his fifth habeas claim, Petitioner alleges he was denied his Sixth Amendment right to a fair trial when the trial court refused to conduct a hearing regarding the inadequacy of his trial counsel based upon the conflict which arose between them. Petitioner did not raise any of these claims or allegations on direct appeal. Petitioner did, however, raise each of these claims in his post-conviction petition, which was later summarily dismissed by the circuit court. Unfortunately for Petitioner, he failed to include any of these claims in his appeal of the circuit court's summary dismissal of his petition for post-conviction relief or in his subsequent PLA to the Illinois Supreme Court. Fair presentment of a claim requires that Petitioner present both the operative facts and the controlling legal principles to each level of the state court system before pursuing the claim in a federal habeas petition. See *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). That rule applies both on direct appeal and in collateral post-conviction proceedings. See, *e.g.*, *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). Because Petitioner did not offer all of the "operative facts and the controlling legal principles" to each level of the state courts below in his post-conviction proceedings in order to

complete one full round of review, Petitioner failed to fairly present his third, first subpart of his fourth, and fifth claims, thus depriving the state courts of the opportunity to correct any infirmities in his trial based upon those claims. See *O'Sullivan,* 526 U.S. at 848 (1999); see also *Lewis*, 390 F.3d at 1025-1026. This failure renders his third, fourth, and fifth claims unexhausted.

**B.     Petitioner's Third, Fourth and Fifth Habeas Claims are Procedurally Defaulted For Failure to Exhaust**

As noted above, if a federal habeas petitioner has failed to properly present his federal claim(s) to the state courts, but there is no longer any corrective process available to him, then the petitioner has procedurally defaulted that claim. *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). In such a circumstance, the Court need not consider the proper disposition of a "mixed petition," which applies only where the unexhausted claims may still be corrected by the state courts. The Court now considers whether any state corrective processes remain available to Petitioner under Illinois law. See *Engle v. Isaac*, 456 U.S. 107, 125 (1982) (a court is to look to state law that provides collateral relief to determine whether a petitioner's claims are procedurally defaulted). If not, Petitioner's unexhausted claims are procedurally defaulted absent a showing of cause and prejudice. *Lewis*, 390 F.3d at 1026.

Because Petitioner already pursued certain of his claims in one round of post-conviction proceedings, in order to return to the Illinois courts for consideration of his unexhausted claims Petitioner would be required to file a successive petition for post-conviction relief, and would be required to seek leave of court to proceed. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction

proceedings and prejudice results from that failure." *Id.* Illinois law specifies the following regarding the cause and prejudice standard: "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Moreover, a separate provision in the Illinois Post-Conviction Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS § 5/122-3. The disposition of an initial post-conviction petition thus has preclusive effect with respect to all claims that *were raised or could have been raised* in that petition. See *People v. McDonald*, 365 Ill. App. 3d 390, 392-393 (3rd Dist. 2006) (emphasis added).

The Court strongly doubts that Petitioner could overcome the preclusive effect of his original post-conviction petition in state court, given that he presented a version of his third and fifth habeas claims and the first subpart of his fourth habeas claim in that petition and simply failed to reassert them during his subsequent appeals of the Circuit Court's denial of his post-conviction petition. Petitioner is not, for example, raising a new constitutional claim such as ineffective assistance of appellate counsel that has arisen since his post-conviction proceedings and could be appropriately disposed of in a successive petition. The Illinois courts likely would find that Petitioner forfeited his right to bring any additional claims. *Id.*

However, further consideration of how the Illinois courts might have treated Petitioner's unexhausted claims is unnecessary to the disposition of this matter because the statute of limitations is fatal to Petitioner's prospects of returning to state court for further proceedings. Illinois's Post-Conviction Act specifies that if a petition for certiorari to the United States

Supreme Court is not filed on direct appeal, "no proceedings under this [statute] shall be commenced * * * more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS § 5/122-1(c). The six-month limitations period lapsed long ago, and Petitioner has not set forth any "facts showing that the delay" in raising new allegations with respect to these two claims "was not due to his [] culpable negligence." *Id.* Petitioner therefore is barred on limitations grounds from further proceedings in the Illinois courts.

Because the limitations period has lapsed and Petitioner is barred from further proceedings in the Illinois courts, an opportunity for "state corrective action" no longer exists and Petitioner has procedurally defaulted his third and fifth habeas claims, as well as the first subpart of his fourth claim. See *Perruquet*, 390 F.3d at 513. Moreover, Petitioner has neither attempted to make a showing of cause and prejudice that might overcome his procedural defaults, nor invoked the "fundamental miscarriage of justice" exception. See *Coleman*, 501 U.S. at 750; *Lewis*, 390 F.3d at 1026. The Court will not make these arguments for Petitioner. See *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002).

## C. The Trial Court's Decision Not to Appoint "Conflict Counsel"

The Court now turns to the merits of Petitioner's remaining claims. In his first claim, Petitioner asserts that he was denied due process and his Sixth Amendment right to counsel when the trial court failed to appoint "conflict counsel" after "trial counsel claimed [petitioner] had threatened him." Pet. at 5. This claim is tied closely to his claim that the he was denied due process when the trial court decided to order him to be shackled and guarded at the trial. On direct appeal, Petitioner claimed that the problem with his trial counsel, Mr. Ticsay, arose after Petitioner believed that Ticsay violated the attorney-client privilege in preparing for Petitioner's

defense by interviewing Ms. Forrester. Ex. A at 23. Ticsay claimed that Petitioner responded by threatening him. *Id*. The trial court questioned both Petitioner and Ticsay regarding the alleged threat. *Id*. Rather than appointing substitute counsel, the trial judge ordered extra security measures at trial to ensure Ticsay's safety. *Id*.

Petitioner appears to contend that the trial judge's refusal to appoint substitute counsel based on Petitioner's alleged threat to his attorney constitutes an abuse of discretion in violation of his Sixth Amendment right to assistance of counsel. Under the Sixth Amendment, a criminal defendant has the right to counsel of choice. *Wheat v. United States,* 486 U.S. 153, 164 (1988). That right, however, is qualified in certain respects, including that "an indigent defendant generally has no right to his counsel of choice appointed." *Id*. at 159. Thus, where a trial court refuses to appoint new counsel, "the defendant can only show a denial of a constitutional right if he can establish that his counsel was ultimately ineffective – that is, he must show prejudice as required by *Strickland v. Washington¸* 466 U.S. 668 (1984)." *Carlson v. Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008). Two methods of asserting a claim based on a counsel's conflict of interest exist. "One, under *Strickland* * * *, the petitioner may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense; or two, the petitioner may proceed under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L. Ed. 2d 33 (1980), where he must establish a violation by showing that an *actual* conflict of interest adversely affected his lawyer's performance." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (internal quotation marks and citations omitted). Proceeding under the second method places a "lighter burden" because the defendant's showing of an "adverse effect" is significantly easier than showing "prejudice" under *Strickland*. *Id.* (citations omitted). An "actual conflict exists if

the defense counsel was face with a choice between advancing his own interests above those of his client." *Id.* (citing *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994)).

Petitioner has not argued, either here or in the state court, that the incident in question gave rise to an "actual conflict of interest" under the *Cuyler* standard. Petitioner, did, however, argue that a *per se* conflict existed between himself and his trial counsel. Ex. A at 9. The Illinois Appellate Court found that Petitioner failed to establish a *per se* conflict under the Illinois standard set forth in *People v. Coleman*, 168 Ill. 2d 509, 542 (1995). Petitioner cites to no authority that a *per se* conflict equates to an "actual conflict of interest" under federal law. Indeed, courts in this district have found that a petitioner who raises a *per* se conflict of interest claim under Illinois state law has not raised an actual conflict of interest claim for fair presentment purposes. See, *e.g.*, *United States ex rel. Mills v. Uchtman*, 2006 WL 695689, at * 4 (N.D. Ill. March 14, 2006) (citing *People v. Spreitzer*, 123 Ill. 2d 1 (1988)) (the term *'per se'* does not appear in the United States Supreme Court case law). Thus, Petitioner's claim here cannot advance under a *per se* conflict theory.

However, Petitioner repeatedly has asserted that his trial counsel performed deficiently because his counsel's response to Petitioner's alleged threat was a request to the court that Petitioner be shackled or otherwise restrained during trial under the *Strickland* standard. See, *e.g.*, Ex. A at 22; Ex. E at 22. The Court therefore proceeds under *Strickland*. On direct appeal, properly citing to *Strickland*, the Illinois Appellate Court found the following:

> [Williams] argues that his attorney performed deficiently by responding to an alleged threat from [Williams] with a request to the court that [Williams] be shackled and accompanied by two deputies while in court. [Williams] fails to cite to any authority for his argument that defense counsel was ineffective for requesting restraints after he had been threatened by [Williams]. In fact, while a defendant should not be shackled unless there is a manifest need, a threat to counsel constitutes such a need. Moreover, even if defense counsel's request was

17

> objectively unreasonable, since [Williams] has not demonstrated that the outcome
> would have been different, no ineffective assistance of counsel is shown.

Ex. D at 10-11. Because the appellate court cited to the appropriate federal law, this Court reviews that decision to determine whether it was an "unreasonable application of" established Supreme Court precedent, namely, the *Strickland* standard. 28 U.S.C. § 2254(d). The Court concludes that it was not. The Appellate Court considered trial counsel's conduct under the *Strickland* standard, and reasonably concluded that his performance was not deficient given the possibility of threat by Petitioner. The Appellate Court further concluded that even if counsel's request for restraint of Petitioner during trial was objectively unreasonable in terms of performance, Petitioner failed to show that the outcome would have been different absent that request. As explained below, the trial court's decision to shackle Petitioner was not contrary to clearly established federal law. Accordingly, there is no basis for Petitioner to argue the result would have been different if counsel's request had been denied by the trial court. For these reasons, the Court rejects Petitioner's claim that he was denied his Sixth Amendment right to counsel when the trial court refused to appoint "conflict counsel."

**D.**     **Trial Court's Decision to Order Petitioner Shackled and Guarded at Trial**

Petitioner's second habeas claim, that he was deprived due process because he was required to wear shackles and have two "jail officers" stationed behind him at trial, likewise is without merit. First, the Supreme Court has held that the Constitution prohibits only the routine use of visible shackles: "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). Thus, the clearly established Supreme Court precedent dictates that a constitutional violation occurs only where shackles are visible *and* not "'justified by a state

interest' – such as the interest in courtroom security – specific to the defendant on trial." *Deck*, 544 U.S. at 624. A determination of "state interest" takes into account "the factors that courts have traditionally relied on in gauging potential security problems." *Id.* at 629.

In the Illinois court proceedings, the Appellate Court reviewed the trial court's decision to place Petitioner in shackles and determined that the trial court did not abuse its discretion in ordering Petitioner to wear shackles, finding that:

> [T]he trial court balanced the need for protective measure against [Petitioner's] right to a presumption of innocence before the jury. The court questioned both the attorney and [Petitioner] regarding [Petitioner's] alleged threat [to his attorney]. The court then ordered [Petitioner] to be shackled while in the courtroom, making a finding on the record that the shackles could not be seen by the jury. The court ruled that neither handcuffs nor other physical restraints would be worn in front of the jury. Instead, the court ordered an additional deputy, for a total of two, to sit immediately behind the [Petitioner]. . . . [N]either the shackles nor the deputies' presence precluded [Petitioner] from communicating with his attorney, if he desired to do so.

Ex. D at 8. Because the Appellate Court did not cite the applicable federal law, this Court reviews the appellate court's decision in order to determine whether it was "contrary" to that law. The Court concludes that the Appellate Court did not act contrary to federal law in this case, because the leg shackles "could not be seen by the jury." The Supreme Court has not determined that the use of non-visible shackles is unconstitutional. Thus, the trial court's use of non-visible leg shackles during Petitioner's trial was not unconstitutional and the appellate court's decision upholding that ruling was not "contrary to" established federal law. Moreover, given Petitioner's threat to his attorney, even if the shackles had been visible, their use may very well have been constitutional given the state interest in maintaining courtroom security in view of the incident between Petitioner and counsel.

Second, with respect to the claim of a due process violation based on the presence of an additional deputy in the courtroom, a federal habeas court's review is limited to a determination

of "whether what [the jury] saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986). The Supreme Court has stated explicitly that "the presence of guards in a courtroom during trial is not the sort of inherently prejudicial practice that should be permitted only where justified by an essential state interest." *Id.* at 568. Rather, "[w]henever a courtroom arrangement is challenged as inherently prejudicial * * * the question [is] * * * whether an unacceptable risk [of prejudice] is presented." *Id.* at 570. A risk of prejudice to the defendant can be justified by the need for courtroom security. *Id.* at 563; see also *People v. Fields*, 322 Ill. App. 3d 1029, 1035 (2001). It is clear from the trial court record that the additional deputy was required to maintain the security of the courtroom in response to defense counsel's claim that Petitioner had threatened him. The Court finds that the existence of additional deputies at Petitioner's trial was not inherently prejudicial, and Petitioner makes no showing of actual prejudice as a result of the deputy's presence. Thus, the Appellate Court's conclusion that Petitioner was not prejudiced as a result of the additional deputy's presence is not "contrary to" established Supreme Court precedent.

In sum, the Appellate Court's determination that the trial court's order requiring Petitioner to wear shackles that the jury could not see and positioning an additional deputy in the courtroom during Petitioner's trial was not "contrary to" clearly established Supreme Court precedent. Therefore, Petitioner's claim that the trial court's use of shackles and an additional deputy at trial deprived him of his constitutional right to due process is rejected.

### E.     Ineffective Assistance of Trial Counsel Based on a Failure to Cross-Examine Witnesses

Petitioner's remaining request for habeas relief in the second subpart of his fourth claim rests on allegations that his trial counsel was ineffective because he failed to appropriately cross-examine two witnesses. On direct appeal, the Illinois Appellate Court, still considering Petitioner's claims under the *Strickland* standard, denied that claim for the following reasons:

> [Williams] also argues that his attorney performed deficiently by failing to cross-examine the two witnesses regarding the photo line-up and [Williams'] business card. [Williams] suggests that may be due to his attorney's allege lack of concentration. [Williams] has the burden of rebutting the strong presumption that counsel's action was not merely a mistaken trial strategy. People v. Young, 341 Ill. App. 3d 379, 383 (2003). At trial, defense's theory of the case was that [Williams] was present in Forrester's apartment as a social guest. Identity was not an issue. Choosing not to cross-examine regarding the identification line-up or the business card would be in accord with his chosen trial strategy.

Ex. D at 11. Under *Strickland*, to establish counsel's deficient performance, a petitioner must overcome the strong presumption that the challenged action – here, allegedly insufficient cross-examination of witnesses – be considered sound trial strategy. *Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) (citing *Strickland*, 466 U.S. at 689). The Appellate Court's determination that trial counsel's decision not to cross-examine witnesses regarding the identification of Williams aligned with his trial strategy – and thus that no deficiency in performance had been shown – falls squarely within clearly established precedent regarding the presumption afforded to counsel in making trial strategy decisions. This Court finds that the Appellate Court's decision in that regard was not an unreasonable application of the *Strickland* standard, and therefore Petitioner's final basis for habeas relief must also be rejected.

### IV.     Conclusion

For the reasons stated above, Williams' petition for writ of habeas corpus [1] is denied.

Dated:  February 2, 2009

_____

Robert M. Dow, Jr.
United States District Judge